IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

*United States of America v. Jose Antonio Galvan, Jr.*
Case No. 1:22-cr-00017-TMB-KFR-1

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on the Final Report and Recommendation (the "R&R") of the Magistrate Judge,[1] recommending the Court deny Defendant Jose Antonio Galvan Jr.'s Motion to Suppress at Docket 31 (the "Motion").[2] Galvan objects to the R&R and the United States (the "Government") filed a response in opposition.[3] On January 20, 2023, the Court held oral argument on the matter.[4] After *de novo* review,[5] and for the reasons discussed below, the Court **ACCEPTS and ADOPTS** the R&R at Docket 68. Consequently, the Motion at Docket 31 is **DENIED**.

*A. Background*

At approximately 9:30 p.m. on February 12, 2022, Anchorage Police Department (APD) Officer Christopher Campbell pulled over a sedan after observing it take a wide turn and noting that its back window was covered with an opaque "cellophane type material."[6] After approaching the vehicle, Officer Campbell saw three people inside: (1) Johnathan Anaruk, the driver; (2) Aileen Kaaiai in the front passenger seat; and (3) Galvan in the right rear passenger seat.[7] Officer Campbell also observed a "purse in the center console . . . and some other miscellaneous items" throughout the vehicle.[8]

---

[1] Dkt. 68 (R&R).
[2] Dkt. 31 (Motion).
[3] Dkt. 63 (Galvan Objections); Dkt. 66 (Government Opposition).
[4] Dkt. 69 (Motion for Oral Argument); Dkt. 76 (Minute Entry).
[5] 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").
[6] *See* Dkt. 1 at 4.
[7] Dkt. 68 at 4; Dkt. 31 at 2; Def. Ex. 1 at 11:11–11:18 (Abridged Officer Mumma Dashcam Video).
[8] Dkt. 57 at 11, 17 (Hearing Transcript); Gov. Ex. 1 at 11:35 (Officer Campbell describing the interior of the vehicle as having "a lot of stuff, purses and stuff, it's hard to kind of tell exactly what's all in the car. The back window's got like this cellophane-thing on it so you can't even see through the back window.").

1

Upon learning that Anaruk did not have a valid driver's license and was on parole for a state assault charge, Officer Campbell contacted an on-call, after-hours probation officer to check on the status of any warrants for Anaruk.[9] Over the phone, the probation officer requested Officer Campbell perform a probation search on the driver and vehicle "for any alcohol, drugs, drug paraphernalia, stolen property, or weapons."[10] During this call, Officer Trevor Mumma arrived on the scene; once Officer Campbell finished the call with the probation officer, he exited his vehicle and informed Officer Mumma of the specifics of the probation-directed search.[11]

Officer Campbell then asked Anaruk to step out of the vehicle while Officer Mumma requested that Galvan and Kaaiai leave the car.[12] While Galvan was exiting the rear passenger seat he asked, "What about my stuff?" to which Officer Mumma responded, "What stuff is yours?" Galvan identified a speaker as his and Officer Mumma informed him that he could bring the speaker with him. Galvan then emerged from the vehicle with a large speaker and set the speaker on Officer Mumma's vehicle's hood.[13] As Officer Campbell searched the driver for weapons, Galvan and Kaaiai stood in front of Officer Mumma's vehicle, where Officer Mumma asked, "You guys don't have any weapons on you?"[14] Kaaiai responded, "No, I don't. Well, I have a knife on me."[15] Kaaiai then admitted that she had two guns in the vehicle under the front passenger seat.[16]

After this exchange, Officer Mumma asked Galvan, "Do you have any weapons on you, man?" to which Galvan replied, "No, sir."[17] Officer Mumma then stated, "Do you mind if I check on you real quick?" Galvan again answered, "No, sir" followed by certain inaudible words.[18] Officer Mumma then walked to Galvan and stated, "I am just going to make sure you don't have any weapons. Just put your hands behind your back real quick."[19] Galvan stated, "Okay," trailed by a string of inaudible utterances.[20]

Once the pat search started, Galvan was holding a cigarette in his hand and Officer Mumma told him to put the cigarette in his mouth.[21] While Galvan turned to his right in an apparent attempt to show Officer Mumma the cigarette, Officer Mumma again told Galvan that he was going to do a "quick pat search."[22] As Galvan put his cigarette in his mouth, Officer Mumma maintained control of Galvan's hand and repeated, "I am just going to do a quick pat search, alright, making sure you

---

[9] Dkt. 68 at 4–5; Gov. Ex. 1 at 13:00–14:00, 14:22–15:10 (Officer Campbell Dashcam Video).
[10] Dkt. 68 at 5; Gov. Ex. 1 at 15:10–15:15.
[11] Dkt. 68 at 5; Gov. Ex. 1 at 14:02–14:10.
[12] Dkt. 68 at 5; Gov. Ex. 1 at 14:15–15:25.
[13] Gov. Ex. 2 at 1:05–1:36 (Officer Mumma Dashcam Video); Dkt. 57 at 18, 27, 45–47, 66, 68.
[14] Gov. Ex. 2 at 1:36–1:38.
[15] *Id.* at 1:38–1:50.
[16] *Id.*
[17] *Id.* at 1:50–2:03.
[18] *Id.*
[19] Gov. Ex. 2 at 1:50–2:03.
[20] *Id.*
[21] Gov. Ex. 2 at 2:00–2:20.
[22] *Id.*

don't have any weapons on you, okay?"[23] At some point, Officer Campbell walked up to Officer Mumma to assist.[24]

As Officer Mumma continued the search, he observed a weapon on Galvan's body and asked, "Okay, what's that right there?"[25] Galvan answered, "It's a, it's a weapon, dude."[26] Officer Mumma then handcuffed Galvan and continued to pat him down, asking if there was anything else on him "that [Officer Mumma] should be aware of."[27] Galvan responded, "No, sir" and "No, no."[28] Following these responses, Officer Mumma found a second gun on Galvan's person.[29]

The officers then placed Galvan in the back of Officer Mumma's car. Shortly afterward, Officer Mumma noticed a vinegar smell, which he recognized as the smell of heroin.[30] Officer Campbell looked in the back seat of the car and suspected Galvan had dumped a large Ziploc bag of heroin and fentanyl, which had been hidden under a waist cummerbund worn by Galvan.[31] At some point later, Galvan appeared to be suffering from the effects of fentanyl poisoning and was taken to the hospital.[32]

After addressing the drugs dumped in the back of the police car, Officer Campbell returned to Anaruk's car to begin the probation search.[33] In the rear passenger seat, Officer Campbell found a backpack and observed that it was " unusually heavy."[34] Based on its weight, and given the items he had been directed to look for as a part of the probation search, Officer Campbell opened the backpack and found a short-barreled rifle, two handguns, ammunition, alcohol, drug paraphernalia, and a digital scale covered with a "light brown powder substance."[35]

On February 15, 2022, Galvan was charged by criminal complaint with one count of Felon in Possession of a Firearm.[36] The United States then indicted Galvan on March 18, 2022, charging

---

[23] *Id.*
[24] Dkt. 57 at 20; Dkt. 31-1 at 2.
[25] Gov. Ex. 2 at 2:12–2:22.
[26] *Id.* at 2:22–2:45.
[27] Gov. Ex. 2 at 3:02–3:04; Gov. Ex. 1 at 16:28–16:30.
[28] Gov. Ex. 2 at 3:05–3:07; Gov. Ex. 1 at 16:31–16:33.
[29] Gov. Ex. 2 at 3:25–3:27.
[30] *Id.* at 7:15-18 (Officer Mumma: "Are you dumping heroin in my car, bro?" Galvan: "No, sir, it just [inaudible]." Officer Mumma: "Why does it smell like vinegar in here all of a sudden?"); Dkt. 57 at 51.
[31] On the video, Officer Campbell is heard saying that Defendant had dumped "a whole thing of meth" in the back of Officer Mumma's car. *See* Gov. Ex. 1 at 20:45-20:54.
[32] Dkt. 57 at 52.
[33] *Id.* at 25, 31, 33.
[34] *Id.* at 25, 29; Dkt. 31-1 at 2–3, 6 (Police Report).
[35] Dkt. 57 at 25, 29; Dkt. 31-1 at 3.
[36] Dkt. 1 (Complaint); *see* 18 U.S.C. § 922(g)(1).

3

him with two additional counts: (1) Possession of Controlled Substances with Intent to Distribute[37] and (2) Possession of Firearms in Furtherance of Drug Trafficking Crime.[38]

### B. Motion to Suppress

Galvan filed the Motion on June 3, 2022.[39] The Magistrate Judge held an evidentiary hearing on the matter on September 29, 2022.[40] At the hearing, Officer Campbell and Officer Mumma testified and the Government introduced the two dashcam videos taken from the officers' patrol cars.[41]

In the Motion, Galvan asks the Court to "suppress all evidence obtained from the warrantless seizure and search of his person and effects on or about the evening of February 12, 2022."[42] Specifically, Galvan requests the Court suppress evidence obtained from the (1) "seizure and subsequent search of Galvan's person" and (2) the "search of a backpack which was located next to [Galvan] at the time he was initially contacted by the police."[43] Galvan argues that under *Terry v. Ohio*[44] and its progeny, Galvan's seizure and these searches violated Galvan's rights under the Fourth Amendment to the United States Constitution.[45] Accordingly, Galvan contends that "all evidence derived from that seizure and those searches [is tainted] and must be suppressed."[46]

First, in relation to the seizure and search of Galvan's person, Galvan argues that "none of the facts surrounding the stop, Anaruk's status as a felon, or probation's direction to search Anaruk's vehicle provided reasonable suspicion that Galvan was committing or about to commit a crime."[47] Galvan contends that when he answered Officer Mumma's question about whether he was armed in the negative, there was "[n]o reasonable basis . . . for Mumma to suspect that [he] was lying."[48] Galvan argues that this response, in addition to his subsequent refusal to consent to a pat search, indicate the lack of "reasonable suspicion that [he] was armed."[49] Galvan concludes that because the seizure, which occurred "once Mumma told him to put his hands behind his back and grabbed hold of his left arm," and subsequent pat search were not premised on reasonable suspicion, the evidence should be suppressed.[50]

---

[37] Dkt. 18 (Indictment); *see* 21 U.S.C. § 841(a)(1), (b)(1)(C).
[38] Dkt. 18; *see* 18 U.S.C. § 924(c)(1)(A)(i).
[39] Dkt. 31.
[40] Dkt. 53 (Minute Entry); Dkt. 57.
[41] *Id.*; Gov. Ex. 1; Gov. Ex. 2 (Officer Mumma Video).
[42] Dkt. 31 at 1.
[43] *Id.* at 2 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).
[44] 392 U.S. 1 (1968).
[45] Dkt. 31 at 7.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 8.
[49] *Id.* at 7.
[50] *Id.* at 9.

4

Second, Galvan contends that because "[he] was illegally detained, and therefore not afforded any opportunity to claim the backpack from the backseat [of the vehicle] and leave the scene, it could be argued that the taint from his illegal seizure extends to the backpack. However, APD lacked any independent authority for the warrantless search of the backpack under the circumstances, so there is an independent basis for suppressing the results of that search."[51] Galvan clarifies that because the search of Anaruk's car was a part of a probation search, "APD needed reasonable suspicion that the [back]pack was Anaruk's or under his control" to search it as part of the probation search.[52] Galvan asserts that the backpack's location on his seat and the fact that the backpack was "unusually heavy" do not provide "a reasonable suspicion that the pack was Anaruk's, nor do they provide exigent circumstances to excuse the warrant requirement."[53] As such, Galvan argues the fruits of the search of the backpack should be suppressed.

The Government opposes the Motion on three bases.[54] First, the Government argues that even if the Court finds Galvan did not consent to the weapons search, Officer Mumma's *Terry* frisk was still proper.[55] The Government states that "[p]rior to [Galvan's] weapons frisk, [Galvan] brought a speaker with him out of the car, looking side-to-side, and over his shoulder as he carried it. . . . His cagey and peculiar behavior provided an objective basis for the officer to suspect that Galvan was armed and dangerous."[56]

Second, the Government contends that Galvan lacks standing to challenge the search of the backpack because he disclaimed his ownership over this item.[57] The Government reasons that because Galvan "abandoned his backpack in the car after being explicitly informed that police were going to search the car," he "abandoned his privacy interest in the property and lacks standing to assert a Fourth Amendment violation."[58]

Third, the Government states that even if Galvan has standing, the search of the backpack was proper under the automobile exception to the Fourth Amendment's warrant requirement. This exception "permits a search of containers within the vehicle to include 'passengers' belongings . . . that are capable of concealing the object of the search'" and law enforcement may

---

[51] *Id.*

[52] *Id.*

[53] *Id.* at 9–10 (distinguishing Galvan's circumstances from *United States v. Bolivar*, 670 F.3d 1091 (9th Cir. 2012)).

[54] *See generally* Dkt. 35.

[55] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." (internal quotation marks omitted)).

[56] Dkt. 35 at 5 (citing Def. Ex. 1 at 1:22–1:45).

[57] *Id.* (citing *United States v. Karo,* 468 U.S. 705, 725 (1984) (O'Connor, J., concurring) ("When a person has no privacy interest whatsoever in a particular container, place, or conversation . . . Fourth Amendment analysis is straightforward—the person lacks standing to suppress the evidence obtained . . . .")).

[58] *Id.* at 6 (comparing Galvan's actions to the facts in *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)); *see also* Def. Ex. 1 at 1:12–1:15.

5

examine containers without showing individualized probable cause for each specific container.[59] The Government contends that under this exception, "[w]here the probable cause relates only to a container within a vehicle, the search of that container is permissible under the automobile exception and the Fourth Amendment."[60] Accordingly, because Galvan denied possessing weapons while having two firearms on his person,[61] "the officers had probable cause that a backpack in the area where the defendant had been seated would contain evidence of his crime."[62]

### C. Final Report and Recommendation

The Magistrate Judge recommends the Court deny the Motion, determining that: (1) Galvan "consented to being frisked prior to police searching him and seizing the two guns tucked into his clothing"; (2) "the subsequent warrantless search of [Galvan's] backpack was proper, as it was both incident to [Galvan's] arrest and pursuant to the automobile exception to the warrant requirement"; and (3) "even if the search incident to arrest or automobile exceptions to the Fourth Amendment's warrant requirement do not apply, the guns and other contraband found in the backpack would have been inevitably discovered pursuant to a valid probation search."[63]

First, addressing the *Terry* stop and frisk, the Magistrate Judge finds that although "[o]fficers did not have reasonable suspicion at the time [Galvan] was searched to believe [he] was a danger to the police or otherwise engaged in criminal activity," the search was permissible because "prior to being stopped and frisked, [Galvan] gave his free and voluntary consent."[64] The Magistrate Judge reasons that "[p]rior to searching Defendant, Officer Mumma inquired about weapons and then followed up with, 'do you mind if I check on you real quick?' Defendant's clear reply to this question was 'no, sir.'"[65] The R&R states that "by applying the most commonly understood meaning to the words used in the exchange between [Galvan] and Officer Mumma," it is clear that, contrary to Galvan's argument, "his answer "no, sir" was not a denial of consent, but rather, permission to search."[66]

Second, the Magistrate Judge determines that "there is no basis to suppress the warrantless search of the backpack located in the back seat of the stopped car" because the search was "permitted pursuant to the search incident [to arrest] and automobile exceptions to the warrant requirement."[67]

---

[59] *Id.* at 6–7 (citing *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016)).
[60] Dkt. 35 at 7.
[61] *Id.* (arguing that Galvan's denial meant he violated Alaska Statute § 11.61.220 Misconduct Involving Weapons in the Fifth Degree).
[62] *Id.* at 7–8.
[63] Dkt. 68 at 1.
[64] *Id.* at 12, 17 (citing *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) (providing factors to determine if consent is freely and voluntarily given)).
[65] *Id.* at 15; Def. Ex. 1 at 1:45–1:50.
[66] Dkt. 68 at 15–16 (citing *United States v. Johnson*, 918 F.2d 181, 181 (9th Cir. 1990) (finding the defendant's consent to be voluntary and unambiguous where officers asked, "do you mind if we search it?" and defendant replied, "no, go ahead.")).
[67] *Id.* at 18.

As an initial matter, the Magistrate Judge does not find that Galvan abandoned or "denied ownership of the backpack" and therefore Galvan "has standing to challenge the search of the backpack."[68]

The Magistrate Judge states that because the officers had probable cause to believe Galvan violated state and federal drug laws, the search incident to arrest exception permitted the backpack search.[69] The Magistrate Judge finds that by virtue of Galvan's "suspected dumping of 'a large gallon Ziploc bag' containing heroin and fentanyl after being found in possession of two guns, there existed probable cause to suspect [Galvan] of violating both federal and state drug laws . . . [and] those laws penalizing the possession of firearms in furtherance of drug trafficking."[70] Accordingly, a "search of the car in which [Galvan] had been minutes prior to being arrested for evidence of those crimes, as well as any containers capable of holding evidence of those offenses, such as a backpack, was reasonable."[71]

Flowing from this probable cause determination, the Magistrate Judge also finds that the automobile exception justified the warrantless search of Galvan's backpack.[72] The Magistrate Judge reasons that Galvan's "presence in the car in the moments prior to his arrest, his associates, [and] his nervousness" created sufficient "probable cause to believe the readily mobile car in which [Galvan] and two others were found contained evidence of those crimes."[73] The Magistrate Judge concludes that "as with the search incident to his arrest, the resulting search of the car and backpack within for evidence of Defendant's drug crimes was reasonable."[74]

Third, the R&R concludes that even "if the Court were to find the search incident and automobile exceptions inapplicable, suppression is not appropriate . . . because the discovery of contraband in [Galvan's] backpack was inevitable by virtue of the probation search conducted on the stopped car."[75] Citing the inevitable discovery doctrine,[76] the Magistrate Judge states that a "preponderance of evidence clearly shows that the reasonable course of the investigation in this case" would have included a probation search of Galvan's backpack, which "would have occurred irrespective of

---

[68] *Id.* at 19 (citing *Nordling*, 804 F.2d at 1466).
[69] *Id.* at 20 ("Police may search a vehicle incident to a recent occupant's arrest in two scenarios – when the arrestee is unsecured and may gain access to a dangerous weapon, or when it is reasonable to believe there is evidence to the crime of arrest that might be found in the vehicle." (citing *Arizona v. Gant*, 556 U.S. 332, 343 (2009)).
[70] *Id.* at 21 (citing ALASKA STAT. § 11.71.010, *et seq.*; 21 U.S.C. § 841; 18 U.S.C. § 924(c)).
[71] *Id.*; *see also Gant*, 556 U.S. at 343.
[72] *See* Dkt. 68 at 11–12 ("[O]fficers may search a readily mobile vehicle so long as there is probable cause to believe the vehicle contains contraband or evidence of criminal activity." (citing *Pennsylvania v. Labron*, 518 U.S. 939, 940 (1996) (per curiam))).
[73] *Id.* at 22.
[74] *Id.* (citing cases).
[75] *Id.* at 23.
[76] *See id.* (citing *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (holding that potentially unconstitutional search incident to arrest did not warrant application of the exclusionary rule because police would have found the evidence while taking inventory of the defendant's belongings during booking)).

7

any prior contact with [Galvan]."[77] Thus, the search was "entirely reasonable as it was a location law enforcement could reasonably conclude, based upon information known to them at the time of the search that the probationer-driver owned, possessed, or controlled."[78]

### D. Objections

The Magistrate Judge filed his initial Report and Recommendation (the "Initial R&R") on November 4, 2022.[79] Galvan lodged three objections to the Initial R&R.[80] The Government filed a response to Galvan's objections on November 28, 2022.[81]

Galvan submits three objections to the R&R, opposing: (1) certain factual findings;[82] (2) the determination that Officer Mumma's weapons search was constitutional because Galvan consented to it;[83] and (3) the conclusion that the search of Galvan's backpack was constitutional.[84]

First, Galvan asserts that he did not unequivocally consent to Officer Mumma's pat search. Galvan argues that prior to Officer Mumma's testimony at the evidentiary hearing before the Magistrate Judge , "Mumma did not [maintain] that Galvan consented to a pat search, but rather that Mumma thought [Galvan] was acting suspiciously."[85] Galvan asserts that Officer Mumma's report following the incident is consistent with the dashcam video, which Galvan claims demonstrates that he did not consent to the pat search because his statement "no sir" is partially inaudible and his "demeanor and body language [are] clearly at odds with the notion of consent."[86] Galvan claims that Officer Mumma's testimony at the evidentiary hearing is "inconsistent with what is plainly depicted on the dashcam footage" and "with the report [Mumma] wrote on the same shift that the events occurred."[87]

Second, Galvan objects to the R&R's conclusion that "Mumma's pat search was constitutional since Galvan unequivocally consented to it."[88] Galvan argues that this position is impermissible because it "rests on the erroneous findings as described in [his first objection]."[89]

Third, Galvan objects to the R&R's conclusion that the search of his backpack was constitutional. Galvan asserts that the backpack search was a not a "valid search incident to [his] arrest, since [he] was arrested for evidence obtained through an illegal pat search and all evidence obtained from

---

[77] *Id.*
[78] *Id.* at 26.
[79] Dkt. 60 (Initial R&R).
[80] Dkt. 63 (Galvan Objections).
[81] Dkt. 66; Dkt. 68 at 27.
[82] Dkt. 63 at 2–3; *see* Dkt. 60 at 7.
[83] Dkt. 63 at 3.
[84] *Id.* at 3–5; *see* Dkt. 60 at 18–26.
[85] Dkt. 63 at 3.
[86] *Id.* at 2.
[87] *Id.*
[88] *Id.* at 3.
[89] *Id.*

8

[him] was tainted by that search."[90] Galvan also argues that the automobile exception is similarly inapplicable because "the only evidence that [he] committed an offense was obtained directly from the illegal pat search and subsequent illegal arrest."[91] Further, Galvan contends that "evidence would not have been inevitably discovered due to a constitutional probation search" because there was no "reasonable suspicion that the backpack was owned, controlled, or possessed by the driver [of the vehicle]" to justify "a valid probation or parole search of the backpack."[92]

On December 2, 2022, the Magistrate Judge submitted his final R&R for the Court's consideration. The Court heard oral argument on the R&R and Galvan's objections on January 20, 2022.[93] At oral argument, Galvan reiterated these three objections, arguing that he did not unequivocally consent to Officer Mumma's *Terry* frisk because when seeking consent Officer Mumma appeared to inform, not ask, Galvan if he could perform a weapons search.[94] Galvan contended that although he appeared to verbally consent, the totality of the circumstances—including his demeanor and body language that "bladed away" from the officer—indicate that he did not actually consent to a weapons search of his body.[95]

The Government does not object to the R&R but responds to Galvan's objections.[96] The Government asserts that the Magistrate Judge's "findings regarding the facts surround the consent [to Galvan's pat search] are thorough and accurate."[97] The Government contends that while Officer Mumma's report "may not have captured the entire universe of information, [] video and audio [from the vehicle's dashcam] certainly did" and it would be "improper for the court to discard the video evidence of the substantive issue merely because a witness did not describe the incident as clearly as he could have described it."[98] The Government concludes that "[s]ince the pat search was lawful, the officers' subsequent actions were lawful, including the search of the backpack."[99] The Government reiterated these points before the Court at oral argument.[100]

### E. Discussion

After a *de novo* review of the R&R, Galvan's three objections, and the record, the Court concludes that Galvan's objections do not merit modification of the R&R.[101] The Court assesses Galvan's first and second objections in tandem and then turns to his third objection.

---

[90] *Id.*
[91] *Id.*
[92] *Id.* at 4 (citing *Bolivar*, 670 F.3d at 1096).
[93] Dkt. 76.
[94] *See generally* Dkt. 77 (Hearing Transcript).
[95] *Id.* at 6.
[96] Dkt. 66.
[97] *Id.* at 2.
[98] *Id.*
[99] *Id.* at 3.
[100] Dkt. 76.
[101] *See generally* Dkt. 60; Dkt. 63; Dkt. 66; Dkt. 68.

1. <u>Galvan Consented to the *Terry* Frisk</u>

After reviewing the footage of Galvan's *Terry* frisk, the Court agrees with the Magistrate Judge's interpretation of the weapons search at issue. In coming to this conclusion, the Court would be remiss not to recognize that traffic stops, such as the one in this case, present a serious risk of injury or death to all those involved.[102] Officer Campbell and Officer Mumma were in a dynamic and potentially dangerous situation as they engaged with individuals that revealed themselves to possess both weapons and drugs.

As an initial matter, the Court agrees that the officers did not have a reasonable articulable suspicion at the time Galvan was searched to believe that he was a danger to the police or otherwise engaged in criminal activity.

As for Galvan's first objection, the Court agrees that the *Terry* stop and frisk at issue was lawful because Galvan consented to Officer Mumma's weapon search. The dashcam footage shows that when Officer Mumma asked Galvan whether he had any weapons, Galvan responded, "No, sir," indicating that he did not have any weapons.[103] When Officer Mumma then asked Galvan if he consented to a pat search by inquiring, "Do you mind if I check on you real quick?" Galvan again said, "No, sir."[104] As the Magistrate Judge observed, "by applying the most commonly understood meaning to the words used in the exchange between [Galvan] and Officer Mumma," a reasonable person would understand that Galvan gave the officer his consent.[105] Moreover, because Galvan had just used the same phrase—"no, sir"—only seconds earlier to definitively state that he did not have any weapons on him, it was reasonable for Officer Mumma to interpret the identical response to his second question as unequivocal and voluntary consent.[106]

Furthermore, the Court is not persuaded by Galvan's assertion that his "demeanor and body language [were] clearly at odds with the notion of consent."[107] After reviewing the relevant

---

[102] *See* Dkt. 57 at 38.
[103] Gov. Ex. 2 at 1:40–1:55.
[104] *Id.* Had Galvan opposed the pat search, it follows that he would have stated "yes, sir" to indicate he did not want Officer Mumma to search him. *See United States v. Gorman*, 859 F.3d 706, 717 n.6 (9th Cir. 2017) (noting that officer in roadside traffic stop did not commence with search of a vehicle after the following exchange: "Finally, when Monroe asked, 'do you mind if we search the vehicle,' Gorman responded, 'I do mind, yes.'"); *see also United States v. Johnson*, 913 F.2d 181, 181 (9th Cir. 1990).
[105] Dkt. 68 at 15–16; *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1131 (9th Cir. 2005) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?") (internal quotation marks omitted).
[106] *See United States v. Chan–Jimenez*, 125 F.3d 1324, 1328 (9th Cir. 1997) (consent must be "unequivocal and specific" and "freely and intelligently given") (citation omitted). The Court also agrees with the Magistrate Judge's determination that, under the *Soriano* factors, Galvan's consent was free and voluntary. *See* Dkt. 68 at 17–18; *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004).
[107] Dkt. 63 at 2.

footage, the Court cannot conclude that Galvan's body language—slightly stepping away from Officer Mumma before the search, followed by "blad[ing] away" while Officer Mumma was searching him for weapons—could override Galvan's clear verbal consent.[108]

As for Galvan's second objection, because the Court finds that Galvan consented to Officer's Mumma's pat search, the *Terry* stop and frisk was constitutional. Consequently, the Court declines to modify the Magistrate Judge's findings as they pertain to Galvan's second objection.

In sum, although the officers did not have a reasonable articulable suspicion to search Galvan's person, Galvan consented to the weapons search.[109] As a result, the fruits of this search—including the two firearms on Galvan's body and the suspected mix of heroin and fentanyl dumped in the back of Officer Mumma's patrol vehicle—shall not be suppressed.[110]

  2. The Warrantless Search of the Backpack Was Valid

Galvan's third objection is to the R&R's conclusion that the search of his backpack was constitutional. Here, too, the Court declines to revise the Magistrate Judge's findings. Since Galvan's *Terry* stop and frisk was constitutional, it follows that the evidence obtained from Galvan subsequent to that search, including the evidence gathered during the search of Galvan's person and his backpack, was not tainted. Similarly, the Court agrees that, after Galvan's suspected dumping of drugs in the back seat of the police car, the officers had probable cause to suspect that Galvan had violated both federal and state drug laws, in addition to those laws penalizing the possession of firearms in furtherance of drug trafficking. Likewise, the Court agrees with the Magistrate Judge that there was also probable cause to believe that Anaruk's "readily mobile car" might contain evidence of those crimes.[111] As a result, the warrantless search of Galvan's backpack was permitted under to both the search incident to arrest and automobile exceptions.

Moreover, even if the search of the backpack did not fit within these two exceptions, the items found in Galvan's backpack would not warrant suppression because they would have been inevitably discovered as a part of the probation search of Anaruk's vehicle.[112] The Court concurs that a "preponderance of evidence clearly shows that the reasonable course of the investigation in this case through the probation search to [Galvan's] backpack would have occurred irrespective of any prior contact with [Galvan]."[113] The probation officer directed Officer Campbell to search Anaruk's vehicle for "alcohol, drugs, drug paraphernalia, stolen property, or weapons" and the

---

[108] Gov. Ex. 2. at 1:40–3:55; Dkt. 77 at 6.
[109] *Terry*, 392 U.S. at 1.
[110] *See Wong Sun v. Ohio*, 371 U.S. 471 (1963).
[111] Dkt. 68 at 22–23 (citing *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986)).
[112] Dkt. 68 at 23; *United States v. Reilly*, 224 F.3d 986, 995 (9th Cir. 2000) ("The inevitable discovery doctrine applies only when the fact that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself.").
[113] Dkt. 68 at 23; *see Nix v. Williams*, 467 U.S. 431, 444 (1984).

11

Case 3:22-cr-00017-TMB-KFR   Document 80   Filed 01/30/23   Page 11 of 13

"scope of this search necessarily included locations within the vehicle in which these items could reasonably be expected to be found."[114]

A backpack inside of a vehicle driven by a person on probation, no matter whether the backpack is in the front or back seat, could reasonably belong to the probationer and be an appropriate container to investigate for drugs or weapons pursuant to the valid probation search.[115] The record demonstrates that Officers Campbell and Mumma did not know that the backpack found on the back seat of the vehicle was Galvan's, despite being placed where Galvan was seated. The dashcam footage shows that when Galvan exited the vehicle he asked, "What about my stuff?" and Officer Mumma responded, "What stuff is yours?"[116] Galvan then identified the speaker as his own and exited the vehicle with it.[117] In further support of the dashcam footage, Officer Mumma testified that Galvan said "he had a speaker and I told him he could bring it with him" but Galvan did not say that he had a backpack.[118] Officer Campbell corroborated this with his testimony that "Officer Mumma . . . asked Mr. Galvan if [the speaker] was his and he grabbed the speaker saying it was his speaker and he at that point didn't claim anything else to Officer Mumma."[119] Because Galvan had made a point of identifying his speaker and removing it from the vehicle—without mentioning his ownership of the backpack—it was reasonable for the officers to suspect that the backpack was under Anaruk's control; it was therefore permissible for the backpack to be searched in the course of the probation search.[120]

In sum, because Galvan consented to the *Terry* frisk and the subsequent search of Galvan's backpack was valid, the R&R does not require revision. The Court therefore **ACCEPTS and ADOPTS** the R&R at Docket 68.

---

[114] Dkt. 68 at 24; Gov. Ex. 1 at 12:20–12:59.
[115] Dkt. 68 at 24–25.
[116] Gov. Ex. 2 at 1:05–1:36.
[117] *Id.*
[118] Dkt. 57 at 45.
[119] *Id.* at 30.
[120] Galvan cites *United States v. Bolivar*, 670 F.3d 1091, 1096 (9th Cir. 2012), to support the conclusion that the officers "would have had cause to reasonably believe that the pack was owned, controlled, and possessed by Galvan." Dkt. 63 at 4. *Bolivar* holds that a valid probation search requires the officers have a reasonable suspicion that a particular item in a residence is owned, controlled, or possessed by the probationer. But here, the record shows that (1) the vehicle was Anaruk's, (2) Galvan identified only his speaker as his property and removed it from the vehicle, and (3) the vehicle contained a variety of purses and other miscellaneous items. *See* Gov. Ex. 1 at 11:35. Under these conditions, it was reasonable for the officers to infer that the backpack, located in Anaruk's vehicle, pertained to Anaruk.

*F. Conclusion*

The Court concludes that Galvan's objections do not merit revision of the R&R and the Court **ACCEPTS AND ADOPTS** the R&R at Docket 68. Consequently, the Motion at Docket 31 is **DENIED.**

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: January 30, 2023.